IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2111-D

| | |
|---|---|
| DEMAR WORRELL, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MICHAEL HARDEE, )<br>)<br>Respondent. ) | **ORDER** |

Demar Worrell ("Worrell" or "petitioner"), a state inmate, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On May 4, 2011, Worrell filed a motion for "DNA Mitochondrial Testing" [D.E. 10]. On May 26 and 27, 2011, Worrell filed affidavits [D.E. 11, 12]. On July 21, 2011, respondent answered the petition [D.E. 15] and filed a motion for summary judgment [D.E. 16]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Worrell about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 18]. On October 14 and 26, 2011, Worrell notified the court of his change of address [D.E. 19, 20]. On October 27, 2011, Worrell filed a "request for judgement" [D.E. 22]. Worrell filed no other response to the motion for summary judgment. As explained below, respondent's motion for summary judgment is granted and petitioner's motions are denied.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> On 19 July 2005 a four-door silver sedan belonging to defendant's mother, Gloria Worrell, pulled into the parking lot of Wachovia Bank in Mount Olive, Wayne County. Defendant and one other person ("Jack") emerged from the sedan, donned orange masks and entered the bank. The driver of the sedan left the bank and waited about a block away.

> Upon entering the bank, defendant announced his intention to commit a robbery and demanded that the tellers "[g]ive me your money." Defendant then jumped over the counter and proceeded to take money from a teller drawer. During this time, Jack brandished a silver pistol and threateningly displayed it to the various bank personnel.
>
> After taking the money, defendant jumped back over the counter and left the bank with Jack. Defendant and Jack ran back to the silver sedan and fled the area.

State v. Worrell, 190 N.C. App. 387, 388, 660 S.E.2d 183, 184–85 (2008). The North Carolina Court of Appeals affirmed Worrell's conviction and sentence. Id. at 394, 660 S.E.2d at 189. Worrell filed a petition for discretionary review in the Supreme Court of North Carolina, which dismissed the appeal and denied the petition on December 11, 2008. State v. Worrell, 362 N.C. 688, 671 S.E.2d 531 (2008). Worrell also has filed a number of post-conviction motions in state court, including several motions for DNA testing, which were all denied. Pet. 10; see Resp't's Mem. Supp. Mot. Summ. J. Exs. 8, 11, 18–19, 26–30. On January 5, 2009, Worrell filed a petition for a writ of certiorari in the North Carolina Court of Appeals, seeking review of an August 7, 2008 superior court order denying his motion for DNA testing. Pet. 10; Resp't's Mem. Supp. Mot. Summ. J. Ex. 20. On January 23, 2009, the North Carolina Court of Appeals denied the petition. Pet. 10; Resp't's Mem. Supp. Mot. Summ. J. Ex. 21. On April 13, 2009, Worrell filed another petition for writ of certiorari, which the North Carolina Court of Appeals denied on April 20, 2009. Pet. 88.

On July 20, 2009, Worrell signed his section 2254 petition. Pet. 15. Worrell asserts four grounds for relief: (1) that the trial court committed reversible error when it pressured him to accept appointment of counsel after he clearly and unequivocally asserted his constitutional right to represent himself; (2) that the trial court erred in denying his pro se motion to continue; (3) that the trial court erred in denying his counsel's motion to continue; and (4) that the superior court erred in denying his motion for post-conviction mitochondrial DNA testing. Id. 5–10. Worrell raised

2

grounds one through three on direct appeal, and he raised ground four in various post-conviction motions. Id.

## II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state-court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from

3

a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Bobby v. Dixon, No. 10-1540, 2011 WL 5299458, at *4–5 (U.S. Nov. 7, 2011) (per curiam); Cavazos v. Smith, No. 10-1115, 2011 WL 5118826, at *3–5 (U.S. Oct. 31, 2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. Stated succinctly, in order to prevail, a petitioner must show "there was no reasonable basis to deny relief." Id. at 784; DeCastro v. Branker, 642 F.3d 442, 449–50 (4th Cir. 2011), petition of cert. filed, (U.S. Sept. 26, 2011) (No. 11-6640).

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of any claim that the state court found to be procedurally barred based on independent and adequate state grounds. See, e.g., Dretke v. Haley, 541 U.S. 386, 392 (2004);

4

Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003). The doctrine also applies "when a state court . . . discusses the claim on its merits, e.g., in conducting a plain error review having found a procedural default." Daniels, 316 F.3d at 487. A state rule is "adequate" if it is firmly established and consistently applied by the state court. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). A state rule is "independent" if it does not depend upon a federal constitutional ruling. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

However, a federal habeas court may review a procedurally defaulted claim if the petitioner demonstrates cause and prejudice as a result of the alleged violation of federal law, or that the failure to consider the federal claim will result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must show that something external to him prevented him from complying with the state procedural rule. Id. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See, e.g., United States v. Frady, 456 U.S. 152, 167–68 (1982).

Worrell first asserts "the trial court committed reversible error when it pressured [him] to accept appointment of counsel after he clearly and unequivocally asserted his constitutional right to represent himself." Pet. 5 (ground one). Worrell raised this argument on direct appeal, and the North Carolina Court of Appeals rejected it as follows:

> Defendant, citing State v. Walters, contends that a trial court errs when a competent, understanding defendant, in the voluntary exercise of his free will, "clearly and unequivocally declare[s] before trial that he want[s] to represent himself and d[oes] not want assistance of counsel," but is not allowed to represent himself. 182 N.C. App. 285, 291, 641 S.E.2d 758, 761 (2007). Defendant contends that his case is "strikingly similar" to Walters and to Faretta v. California, 422 U.S. 806 (1975), a United States Supreme Court case recognizing a criminal defendant's constitutional right to represent himself.
>
> However, "courts indulge in every reasonable presumption against waiver . . . of the right to counsel[.]" Brewer v. Williams, 430 U.S. 387, 404 (1977) (citations

5

omitted) (holding that the defendant had not waived right to counsel and affirming suppression of incriminating statements made without the presence of council [sic]). "[T]he trial court must conduct a thorough inquiry" before it allows a criminal defendant to waive appointed counsel. State v. Thomas, 331 N.C. 671, 674, 417 S.E.2d 473, 476 (1992) (granting a new trial when the trial court allowed the defendant to waive appointed counsel without conducting a thorough inquiry to ensure that defendant understood the consequences of proceeding pro se).

After review of the record, we do not find that this case is "strikingly similar" to Faretta or Walters. In Faretta, the defendant was granted a new trial when the trial court "required that [the defendant's] defense be conducted only through the appointed lawyer from the public defender's office," 422 U.S. at 811, even though the defendant was "literate, competent, and understanding" and "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Id. at 835. In Walters, this Court extended the holding in Faretta to a case where the trial court badgered an unwilling defendant until he accepted a court-appointed attorney[.]

. . .

The facts in the record sub judice are manifestly different from Walters and Faretta. Here, the trial court questioned defendant about his ability to represent himself, noted for the record that defendant "answered all of my questions and that he knowingly, intelligently, voluntarily, and as his informed choice has waived any right to a lawyer[,]" and then recognized James Copeland, who had previously been appointed, as standby counsel. The trial court heard defendant's pro se pre-trial motions. The trial court granted some of his motions and denied others, treating defendant with respect throughout the hearing.

. . .

Defendant then moved for continuance, and told the trial court that he would have "no choice" but to accept court-appointed counsel if the trial court did not continue his case. The trial court then denied defendant's motion for continuance.

After the denial of his motion for continuance, defendant realized that he was not capable of adequately providing his own defense. He voluntarily revoked his waiver of appointed counsel and informed the trial court that he would no longer represent himself, but would be represented by Mr. Copeland as his court-appointed attorney. The trial court asked again, to ensure that representation by Mr. Copeland was fully defendant's choice, before appointing Mr. Copeland as defense counsel.

There is no evidence in the record that the trial court expressly forced appointed counsel on defendant, as in Faretta, 422 U.S. at 811, nor is there any evidence that the trial court pressured, coerced, or badgered defendant into accepting appointed counsel, as in Walters, 182 N.C. App. at 293, 641 S.E.2d at 762. Rather, the trial

6

court "indulge[d] in every reasonable presumption against waiver of the right to counsel[,]" Brewer, 430 U.S. at 404, and "conduct[ed] a thorough inquiry[,]" Thomas, 331 N.C. at 674, 417 S.E.2d at 476, before defendant voluntarily revoked his waiver of the right to counsel. Accordingly, we hold that the trial court did not err when it allowed defendant to be represented by counsel.

Worrell, 190 N.C. App. at 389–91, 660 S.E.2d at 185–86 (some alterations in original) (footnotes omitted). Worrell further appealed the issue to the Supreme Court of North Carolina, which denied his petition for discretionary review. Resp't's Mem. Supp. Mot. Summ. J. Ex. 6.

Worrell has not shown that the North Carolina Court of Appeals' ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

Next, Worrell asserts that the trial court erred in denying both his and his attorney's motions to continue. Pet. 6–8 (grounds two and three). Worrell raised these arguments on direct appeal to the North Carolina Court of Appeals, which rejected them as follows:

> Defendant contends that he was prejudiced by the trial court's denial of his motions for continuance, the first made pro se, the second made by his appointed counsel. Defendant, citing State v. Rogers, contends that "when a motion to continue raises a constitutional issue, . . . the trial court's ruling is fully reviewable by an examination of the particular circumstances of each case." 352 N.C. 119, 124, 529 S.E.2d 671, 675 (2000) (citation and internal quotation marks omitted). The State relies on State v. Branch, to contend that the denial of defendant's motions to continue should be reviewed only for abuse of discretion. 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982) (noting both standards of review, and concluding that the record showed neither abuse of discretion nor prejudice to defendant in the denial of the motion to continue). We agree with defendant's standard of review, with the added proviso that "the denial of a motion to continue, whether a constitutional issue is raised or not, is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error." Rogers, 352 N.C. at 124, 529 S.E.2d at 675 (emphasis added).

7

Before ruling on a motion to continue, the trial court shall consider, inter alia, "[w]hether the case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that more time is needed for adequate preparation[.]" N.C. Gen. Stat. § 15A-952(g)(2) (2005). Consideration of a motion to continue pursuant to section 15A-952(g)(2) is heavily fact-based, and disposition of the motion is to be determined by weighing the complexity of the charges, including the number of incidents, the number of witnesses, the number of locations involved, and the severity of the punishment, against the amount of time available for preparation of a defense. Rogers, 352 N.C. at 125, 529 S.E.2d at 675.

A trial court errs when it denies a motion to continue where the defendant "d[oes] not have ample time to confer with counsel and to investigate, prepare and present his defense." Rogers, 352 N.C. at 125, 529 S.E.2d at 675 (citation and quotation marks omitted) (holding that a motion to continue was improperly denied when the crimes committed involved "multiple incidents in multiple locations over a two-day period" and counsel had only thirty-four days to prepare for a bifurcated capital trial); but see Branch, 306 N.C. at 105-06, 291 S.E.2d at 657 (holding that the motion to continue was properly denied when four months had passed between indictment and trial and the defendant did not support his motion with the names of any witnesses necessary to his defense); State v. Searles, 304 N.C. 149, 154-55, 282 S.E.2d 430, 433-34 (1981) (holding that a motion to continue was properly denied when eight weeks had passed between appointment of counsel and trial and the defendant gave the trial court only the nickname of a potential witness and made no showing of why the witness was necessary to his defense).

A. Defendant's First Motion to Continue

On the day defendant's case was called for trial, before jury selection, defendant moved pro se to continue for the following reasons:

> I have more evidence that I would like to bring forth and subpoena the witnesses I would like to bring on my behalf. . . .
>
> . . . .
>
> I just ask I may be granted a continuance based on my ignorance, and I would like to at least be having a chance to have evidence on my behalf that I need to bring forth [to] the Court, too . . . .
>
> . . . .
>
> I didn't even think this case was going to be on the docket for at least another seven, eight months. So I really wasn't-I was, pretty much, getting down pat about my investigation, who I wanted to subpoena around the time when I went to court last week and [Judge] Weeks told me about them taking this to trial Monday, today . . . .
>
> . . . .
>
> I didn't think this case was going to come up so fast.

8

As in Rogers, defendant's motion to continue was on the grounds of insufficient time to prepare an adequate defense and therefore raises constitutional questions which will be "fully review[ed] by an examination of the particular circumstances of [the] case." Rogers, 352 N.C. at 124, 529 S.E.2d at 675.

Defendant was proceeding pro se when he first moved for a continuance, so the first prong of Rogers, "ample time to confer with counsel[,]" 352 N.C. at 125, 529 S.E.2d at 675, is irrelevant to defendant's first motion to continue and we need to consider only whether defendant had sufficient time "to investigate, prepare and present his defense." Id. The record shows that nearly three months had passed between defendant's indictment and the trial date. Defendant offered the names of no witnesses who were necessary to his defense and made no showing as to any relevant facts for which he needed time to gather evidence. On this record, we conclude that defendant's first motion to continue is inapposite to Rogers. Rather, it is apposite to Branch, 306 N.C. at 105-06, 291 S.E.2d at 657, where this Court found no error in the denial of a motion to continue when four months had passed between indictment and trial and the defendant did not support his motion with the names of any witnesses necessary to his defense. Accordingly, we hold that the trial court did not err when it denied defendant's first motion to continue.

B. Defendant's Second Motion to Continue

The day after defendant began to be represented by court-appointed counsel, he moved for continuance a second time through counsel, arguing to the trial court:

> I will need to get a continuance [in order for a private detective] to be of any assistance to me at all . . . .
> Additionally, Your Honor, I sent Mr. Worrell's mother out to get a witness [who] would corroborate what he told police . . . . about what happened on that day . . . . [The witness] [d]idn't really know him but remembered the incident happening . . . . [S]he remembered him trying to get into her house, use the phone, but she wouldn't let him in.
> I got the name of that person . . . . [S]he apparently is, I'm guessing, an elderly woman.
> . . . .
> . . . . [S]he is apparently a reluctant witness to come up here[.]

The trial court denied defendant's second motion for continuance and proceeded to jury selection.

Mr. Copeland was appointed on Friday, 16 March 2007, as standby counsel, a role limited "to assist[ing] the defendant when called upon and to bring[ing] to the judge's attention matters favorable to the defendant[.]" N.C. Gen. Stat. § 15A-1243 (2005); see also Thomas, 331 N.C. at 677, 417 S.E.2d at 478. Mr. Copeland learned on Tuesday, 20 March 2007, that the case was calendared for trial on Monday, 26 March 2007. Jury selection began on Tuesday, 27 March 2007. Defense counsel had

9

been involved in the case in the very limited role of standby counsel for only ten days, and had less than twenty-four hours from when he was appointed to prepare for trial as sole counsel on a charge of armed robbery, a Class D Felony. Defendant supported his motion to continue by describing an essential witness in detail and forecasting relevant evidence to which the witness was expected to testify.

Even though the crimes for which defendant was being tried involved only one incident in one location and a small number of witnesses, less than one day with Mr. Copeland as sole counsel was not sufficient to allow defendant "ample time to confer with counsel and to investigate, prepare and present his defense." Rogers, 352 N.C. at 125, 529 S.E.2d at 675. Accordingly, we conclude that the trial court was presented with sufficient basis for continuance.

In deciding this case, we are careful to avoid chilling a criminal defendant's right to represent himself, Rogers, 352 N.C. at 126, 529 S.E.2d at 675, but we note that "[a] defendant is not prejudiced . . . by error resulting from his own conduct[,]" N.C. Gen. Stat. § 15A-1443(c) (2005), and we are wary of actions by a criminal defendant which tend to "disrupt or obstruct the orderly progress of the court under the guise of . . . nonmeritorious motions to continue[,]" Rogers, 352 N.C. at 126, 529 S.E.2d at 676 (internal citation and quotation marks omitted). Defendant's insistence on representing himself, which he later revoked, contributed to the late date at which Mr. Copeland was appointed as defense counsel. Further, the trial court granted a recess of two business days at the close of the State's evidence on Wednesday, resuming court the next Monday, in order for defendant to procure his witness, and a witness matching the description given by defendant—Annie Mae Thompson—appeared and testified on Monday following the recess:

> Q. Okay. Now, during the summer of 2005, did anything unusual happen at your house that you recall, ma'am?
> A. Yes . . . . Someone knocked on the door[.]
> . . . .
> He said . . . , "Miss, may I use the telephone, please?" I said, "No. I don't open my door at night." But I didn't tell him why.
> Q. Did you ever open the door to see who he was?
> A. No.

On this record, we conclude defendant's contribution to the delay in appointment of counsel, combined with the trial court's grant of a two business day recess for the procurement of the necessary witness, and the witness' appearance and testimony to the facts forecast in support of the motion to continue leave no basis for defendant to complain on appeal that he was prejudiced by the denial of his second motion to continue. This assignment of error is overruled.

Worrell, 190 N.C. App. at 391–95, 660 S.E.2d at 186–89.

Respondent contends summary judgment is appropriate on these claims because they are procedurally defaulted. Resp't's Mem. Supp. Mot. Summ. J. 11. A prisoner is required to exhaust the remedies available to him in the state courts before he files a writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement of section 2254 demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a motion for appropriate relief and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

Worrell raised these claims on direct appeal to the North Carolina Court of Appeals, but did not include them in his petition for discretionary review with the Supreme Court of North Carolina and thus did not exhaust his claims through the direct review process. See O'Sullivan, 526 U.S. at 845. Worrell's numerous state post-conviction motions also failed to exhaust these claims. Therefore, the North Carolina courts have not had "one full opportunity to resolve [these] constitutional issues." Id. Furthermore, if Worrell were to return to state court and attempt to raise these claims again through a motion for appropriate relief, they would be procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(3). Thus, Worrell has procedurally defaulted these claims.

11

To the extent Worrell asserts ineffective assistance of appellate counsel for failing to include the claims in his petition for discretionary review as a cause for his failure to exhaust, the contention fails. There is no constitutional right to counsel to seek discretionary review in the Supreme Court of North Carolina. See, e.g., Wainwright v. Torna, 455 U.S. 586, 587–88 (1982) (per curiam); Ross v. Moffitt, 417 U.S. 600, 610–12 (1974). Consequently, a claim of ineffective assistance of counsel for failing to file a petition for discretionary review cannot constitute "cause" for procedural default. See, e.g., Coleman, 501 U.S. at 752–53.

Alternatively, Worrell has not shown that the North Carolina Court of Appeals' ruling on these issues reached a result contrary to, or involved an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, these claims fail.

Finally, Worrell asserts error in the state court's denial of his motions for mitochondrial DNA testing. Pet. 9 (ground four). At trial, the State presented evidence tending to show that the men who robbed the bank wore orange masks. Pet. 11; Resp't's Mem. Supp. Mot. Summ. J. 18. The State introduced an SBI laboratory report indicating that hairs found on the masks did not belong to Worrell or his accomplice. Id. Worrell asserts that the State had a second SBI laboratory report, which also indicated that the hairs found in the masks did not match hair samples for either Worrell or his accomplice, that the State "hid[] [the second report] from jury and defense," and that the State did not finalize this second report until the day after the SBI agent who performed the testing testified at Worrell's trial. Id. Worrell argues that he discovered this second report after his trial, "only [through] luck and investigation[.]" Id. Worrell contends that mitochondrial DNA testing will prove his innocence. Pet. 15.

12

In response, respondent states:

> SBI Agent Lucy Milks, of the agency's trace evidence section, examined a head hair fragment from orange masks presumably used in the Wachovia robbery, labeled item #7, at the request of the investigating officer of the robbery, Lieutenant T. Brown. Agent Milks determined that the item #7 hair was similar to a sample of Petitioner's hair but that, "due to its limited characteristics, no conclusion [could] be drawn as to the origin of the hair." Agent Milks also examined another head hair sample from the orange masks, item #8, which she noted on her report was suitable for nuclear DNA analysis. Agent Milks removed the root of the hair labeled item #8 and submitted it to SBI Agent Timothy Baize, a forensic DNA analyst, for DNA testing on January 23, 2007. Agent Milks' report, dated March 29, 2007, is the one which Petitioner claims was never disclosed to him at or prior to trial.
>
> According to Agent Baize's laboratory report referencing the DNA testing of the hair root labeled item #8, the root did not match the DNA profile of Petitioner or his accomplice. Agent Baize's laboratory report was dated March 27, 2007, two days before the date on Agent Milks' report. Agent Baize testified at Petitioner's trial that the partial DNA profile from the hair root did not match that of either Petitioner or his accomplice. Neither Agent Milks nor Agent Baize testified at trial about the additional hair sample labeled item #7 that Agent Milks determined, as noted in her report, had similar characteristics as Petitioner's hair. In a letter to the prosecution dated July 17, 2008, Agent Milks explained that there was no root on the hair labeled item #7, and thus, no nuclear DNA testing could be due thereon. Agent Milks went on to note that mitochondrial DNA testing was possible, but the SBI did not conduct that type of analysis.

Resp't's Mem. Supp. Mot. Summ. J. 18–19 (internal citations omitted) (citing Resp't's Mem. Supp. Mot. Summ. J. Ex.13); see also Pet. 78–82 (excerpt of SBI Agent Milks's report), 132–33 (excerpt of trial transcript), 136 (application for search warrant describing "orange masks . . . . with strands of hair"), 137–42 (excerpt of SBI report), 143–151 (transcript of Agent Milks's testimony)

The superior court denied Worrell's motions for mitochondrial DNA testing and reasoned:

> Based upon its review of the matters noted above, the Court concludes that Defendant is not entitled to the relief that he seeks and that his assertions are without merit. While Defendant claims that Mitochondrial DNA Testing is necessary to prove his innocence, the testimony at Defendant's trial on the charges in this case revealed that all the relevant evidence had been subject to DNA testing prior to trial and that the DNA samples did not match up with Defendant's DNA. Therefore, additional DNA testing would not benefit Defendant's contention of innocence—the evidence at issue has already shown not to have DNA evidence that can be tied to

13

> Defendant, and that information and its relationship to the evidence in this case was made available to the jury at Defendant's trial. Given this information, there does not exist a "reasonable probability that the verdict would have been more favorable to the defendant," see N.C. Gen. Stat. § 15A-269(b)(2), if mitochondrial or other additional DNA testing was performed on the evidence in this case.

Pet. 160; Resp't's Mem. Supp. Mot. Summ. J. Ex. 26 (April 23, 2009 court order).

Worrell has not shown that the superior court's ruling on these issues reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See, e.g., Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2320, 2322 (2009). Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

### III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 16], DENIES petitioner's motions for mitochondrial DNA testing [D.E. 10] and motion for judgment [D.E. 22], and DISMISSES Worrell's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

SO ORDERED. This 9 day of November 2011.

JAMES C. DEVER III
Chief United States District Judge